AGNES H. LIPPINCOTT

*v.*

SAMUEL C. SMITH et al.

[Decided March 15th, 1905.]

1. The lands of a deceased debtor descend to his heirs-at-law bound for the payment of the ancestor's debts. The heir receives by descent the estate whereof the ancestor dies seized, subject to all its liens and charges.

2. The creditor of the heir cannot, by entry of judgment and levy against the heir, acquire a right to payment from the ancestor's lands in priority to the debts owing by the ancestor, subject to which the defendant heir took his estate.

3. The judgment creditor of the heir can, under his judgment, levy an execution on all that belonged to his debtor, but he can take nothing more. He simply represents the debtor and takes the property as the debtor held it.

4. *Clement* v. *Kaighn, 15 N. J. Eq. (2 McCart.) 47*, distinguished.

In partition. On exceptions to master's report.

In this case lands situate in Camden county have been sold and the proceeds of sale distributed by a decree dated the 22d day of December, 1904, except the portion thereof arising from the sale of the share of the defendant Joseph A. Burroughs, which portion by the same decree has been directed to be paid into this court to abide the chancellor's order as to its further disposition.

By the master's report and the testimony thereto annexed, it appears that Mary Anna Burroughs was seized in fee of an undivided one-fifth part of the premises sold; that on the 2d day of March, 1897, while she was so seized, Rachel Burroughs entered judgment in the supreme court for $2,078.30 against Mary Anna Burroughs, which then became a lien upon Mary Anna's share.

Two executions were delivered to the sheriff of the county of

Camden, in the lifetime of the defendant Mary Anna Burroughs, but neither of them appears to have been levied upon the undivided one-fifth part of Mary Anna in the premises sold in this partition suit.

Mary Anna Burroughs died intestate on December 15th, 1897, and the undivided fifth share of which she was seized in fee descended to her only child and sole heir-at-law, Joseph A. Burroughs.

Daniel V. Summerill, Jr., on March 1st, 1904, entered a judgment in the supreme court against Joseph A. Burroughs, apparently for his individual debt for $882, damages, and $30 costs. On March 4th, 1904, an execution issued on this judgment was delivered to the sheriff of Camden county and levied on the estate of the defendant Joseph A. Burroughs in the undivided one-fifth of the premises sold.

The master has reported that the share of Joseph A. Burroughs is subject to the lien of both the above-mentioned judgments, but that the lien of the Summerill judgment is first in order of priority.

Exceptions have been filed by Rachel Burroughs to the master's report in this respect, the exceptant insisting that her judgment (even if the executions issued upon it were not levied on the particular undivided one-fifth) became by mere entry and the delivery of executions to the sheriff a lien upon all the estate of the defendant Mary Anna Burroughs; that the estate which descended to her heir-at-law, Joseph A. Burroughs, came to him charged with the lien of Rachel's judgment, and that the only interest upon which Summerill's judgment could become a lien or be levied was that which descended to Joseph A. Burroughs, which interest was subject to the lien of Rachel's judgment as above stated.

On these exceptions the matter was heard.

*Mr. Ephraim Tomlinson* and *Mr. Peter V. Voorhees,* for the exceptant, Rachel Burroughs.

*Mr. Samuel H. Richards,* for the respondent Daniel V. Summerill, Jr.

GREY, V. C.

It appears in proof that Mary A. Burroughs, in 1873, while seized of a fee-simple estate in her share of the lands sold in this suit, conveyed to her mother, Ann W. Smith, an estate therein during her (Ann's) life. The Rachel Burroughs judgment against Mary A. Burroughs was entered in 1897, and then became a lien upon the fee-simple estate which remained in the defendant in that judgment, Mary A. Burroughs, but subject to the life estate of Ann W. Smith, previously conveyed to her by Mary A. Burroughs. This life estate terminated upon Ann W. Smith's death in 1902.

There can, I think, be no question that Rachel Burroughs' judgment became a lien upon the fee-simple estate of Mary A. Burroughs, the defendant in that judgment, in any lands in this state, by its mere entry in the minutes of the supreme court. That is the declaration of section 2 of the act concerning judgments. Revision, approved March 27th, 1874, to be found in *2 Gen. Stat. p. 1841.*

After Rachel's judgment had been actually entered in the minutes, and thus became a binding lien upon the estate of the defendant Mary Anna Burroughs, the latter had no power by any act of her own, save by payment of that judgment, to discharge its lien. She could not discharge it by either her deed or her will. This situation continued during the whole life of the defendant Mary Anna Burroughs. She did not pay Rachel's judgment in her lifetime. Upon Mary Anna's death intestate, her lands descended to her heir-at-law charged with the lien of Rachel's judgment. The heir took as a volunteer simply that of which the ancestor died seized, no more no less, subject to all its liens and charges. As his ancestor Mary Anna Burroughs could not in her lifetime divest the lien of Rachel's judgment (save by payment), neither could her heir-at-law, Joseph A. Burroughs, discharge it in any other way, for all that descended to him, all that he acquired by the descent, was his ancestor's estate charged with the lien of Rachel's judgment.

This was the situation which existed in 1904 when Summerill entered his judgment against the heir, Joseph A. Burroughs. As

a creditor of Joseph he had the right, by his judgment, to acquire a binding lien upon the estate which Joseph received from his ancestor, Mary A. Burroughs, namely, a fee-simple in the lands in question, charged with the lien of Rachel's judgment. A judgment creditor may take and apply that estate in his defendant debtor's property which his defendant debtor owns, subject to all liens and charges existent upon it, but he can take no greater or freer estate or interest in that property than his defendant debtor owns. That is the definition of the judgment creditor's right, given by our court of errors and appeals in the case of *Herbert* v. *Mechanics' Building and Loan Association,* *17 N. J. Eq. (2 C. E. Gr.) 500,* when it declared that the creditor "can, under his judgment, levy on execution all that belonged to his debtor, but he can take nothing more. He simply represents the debtor, and he takes the property as the debtor held it."

There is therefore no conflict of lien between these two judgments. That of Rachel became, on March 24th, 1897, a lien upon the fee-simple estate which Mary Anna Burroughs then held in the undivided one-fifth part of the premises in question.

When Mary Anna died on December 15th, 1897, intestate, her estate, subject to Rachel's judgment, descended to her heir-at-law, Joseph A. Burroughs. Mr. Summerill's judgment, entered March 1st, 1904, against Joseph, is a lien only upon what Joseph acquired by the descent, *i. e.,* an estate in fee in the said undivided one-fifth part, subject to the lien of Rachel's judgment.

Counsel for Mr. Summerill insists that under the provisions of section 9 of the act concerning the sale of lands, &c., *(3 Gen. Stat. p. 2981),* and its construction in this court in the case of *Clement* v. *Kaighn, 15 N. J. Eq. (2 McCart.) 47,* by Chancellor Green, it must be held that the plaintiff in a junior judgment, by suing out and actually levying the first execution upon the land, acquires a priority of lien over that of the senior judgment under which no execution has been issued, or, if issued, which has not been executed by levying it on the land. This construction given in the case cited, though one of first instance in respect to the extent of its application in the case decided by Chan-

cellor Green, has ever since been accepted as the established law of the state.

The essence of that decision is its interpretation of section 13 of *Rev. L. p. 433;* which is section 9 (*Nix. Dig. p. 724*), and now to be found in *3 Gen. Stat. p. 2981,* under the title "Sales of Land." Chancellor Green there held that section to mean that where a judgment was entered against K., and no execution was issued and levied under it, and subsequently another judgment was entered against the same person, under which an execution was recorded and issued and levied on the lands of K., the purchaser buying under the junior judgment and levy acquired a title prior to the lien of the senior judgment, and that this priority operated to postpone the senior judgment ·to all liens intermediately imposed on the lands between the senior and junior judgments.

The chancellor placed his decision upon the recital in the preamble of section 9, to the effect that the design of the statute is to give the plaintiff in the junior judgment upon which execution is first issued out "the proper fruits and effects thereof."

In that decision it will be noticed that all the judgments were entered against the same person. They bound the same estate in the lands, and the point to be determined was the effect of the statute upon their priority.

In the present case the judgments are entered against different persons and bind different estates. The judgment of Rachel Burroughs was against Mary A. Burroughs and bound the estate which Mary A. Burroughs had in the lands at the time it was entered in 1897. The judgment of Daniel V. Summerill, Jr., was against Joseph A. Burroughs and bound only the estate which Joseph had in the land in 1904. What he had was what descended to him from his mother, Mary A. Burroughs, subject to all liens and charges against her estate.

The "proper fruits and effects" to which Mr. Summerill became entitled by his judgment was to have the estate in the lands whereof his debtor, Joseph A. Burroughs, was seized applied to the payment of his judgment. When this is done Mr. Summerill will have had the full "fruits and effects" to which his judgment and levy against Joseph A. Burroughs entitle him.

That the estate in lands of a deceased debtor is charged with a lien to each of his creditors for the payment of his debts, without their having any judgments, was expressly held by the court of errors and appeals, in *Haston* v. *Castner, 31 N. J. Eq. (4 Slew.) 699,* interpreting the effect of the statute (*Rev. p. 766 § 710,* now *P. L. 1898 p. 743 § 81*). The court declared that the debt of the ancestor continued to be a lien on his lands after descent and until a *bona fide* sale thereof had been made by the heir.

In view of this declaration of our highest court that the estate in lands of a deceased debtor is bound for his debts to his creditor without a judgment, it would be absurd indeed to hold that because the creditor of an ancestor had entered a judgment against him in his lifetime, but did not levy, the creditor should lose his lien for the benefit of the levying judgment creditors of the heir-at-law.

The trend of the whole policy of all statutory enactments on the subject is to compel the application of the property of decedents to the payment of their debts. The heir takes what is left after the debts of the ancestor have been paid out of his estate. As this is all the heir receives from the ancestor, it is all that the heir's creditors can seize.

The master erred in holding that the Summerill judgment execution and levy had priority over the Rachel Burroughs judgment, and the exception taken to his report should be sustained.

A decree to that effect will be advised.